IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CRAIG RADFORD,<br><br>                    Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF COMMERCE, a political subdivision of the State of Utah,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:11-cv-00997-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Craig Radford brought this action against the Utah Department of Commerce (the "Department") alleging causes of action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Department moved this Court to dismiss Mr. Radford's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction based on Eleventh Amendment immunity and mootness, and Rule 12(b)(6) for failure to state a claim upon which this Court can grant relief.  In the alternative, the Department seeks an order directing Mr. Radford to provide a more definite statement of his claims under Rule 12(e).

The parties consented to the exercise of jurisdiction by the undersigned Magistrate Judge under 28 U.S.C. section 636(c).  (Docket No. 14.)  The Court has read the Motion and Memoranda submitted for and against Defendant's Motion to Dismiss and/or for More Definite Statement (Docket No. 17) and GRANTS that Motion.[1]  Mr. Radford's Complaint fails to allege

---

[1] The Court determined it can decide the Motion based on the briefing and does not need oral argument.  *See* DUCivR 7-1(f).

that he qualified for participation in the program at issue in spite of his disability: specifically, the lien brought against Mr. Radford initially did not qualify for the state program because it did not pertain to materials used in the renovation of Mr. Radford's home. Hence, Mr. Radford fails to state a claim under either the ADA or the Rehabilitation Act. The Court must therefore DISMISS his Complaint. The Court DENIES the Motion for a More Definite Statement because the facts alleged make pleading a claim under either the ADA or the Rehabilitation Act impossible.

## LEGAL STANDARD

To withstand a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "a court must accept as true all of the allegations contained in a complaint," this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.* (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id.* (citation omitted).

A challenge to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may take one of two forms. First, a party may bring a facial attack, which "looks only to the factual allegations of the complaint in challenging the court's jurisdiction." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). Second, a party may bring a factual attack, which "goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction." *Id.* (citation omitted). Because the Department makes a facial attack, the same standard applies to

Defendant's 12(b)(1) and 12(b)(6) attacks. *Id.*; *M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1304 (D. Utah 2003).

## FACTUAL BACKGROUND[2]

Plaintiff Craig Radford is deaf and communicates using American Sign Language. (Compl. ¶ 1.) Mr. Radford contracted for work on his home and paid the contractor for the work. (*Id.* ¶¶ 13–14.) A payment dispute arose between one of the subcontractors and that subcontractor's supplier. (*Id.* ¶ 15.) The supplier placed a lien on Mr. Radford's home. (*Id.* ¶ 15.) Although the contractor assured Mr. Radford that it had taken care of the lien, Mr. Radford later faced a default judgment in favor of the supplier because he had not resolved the lien. (*Id.* ¶¶ 17–18.)

Mr. Radford applied for a Certificate of Compliance[3] under the Utah Residence Lien Restriction and Lien Recovery Fund Act (the "Lien Recovery Fund Act"), Utah Code Ann. §§ 38-11-101 to -302, in order to settle the lien, but the Lien Recovery Fund told Mr. Radford his application was incomplete. (*Id.* ¶ 20.) Mr. Radford attempted to cure his application but could not understand what additional information he needed to include. (*Id.* ¶ 20.) In early August 2009, Mr. Radford met with a representative of the Lien Recovery Fund to remedy his defective application. (*Id.* ¶ 21.) Mr. Radford requested the Lien Recovery Fund have an American Sign Language interpreter present at the meeting, but no interpreter came. (*Id.* ¶ 21.) Soon thereafter, the Lien Recovery Fund sent Mr. Radford a letter denying his claim. (*Id.* ¶ 21.)

---

[2] The Court recites the facts below from Mr. Radford's Complaint. The Department does not dispute all well-pled facts for purposes of this Motion only.

[3] Utah's Residence Lien Restriction and Lien Recovery Fund Act defines "Certificate of compliance" as "an order issued by the director to the owner finding that the owner is in compliance with the requirements of Subsections 38-11-204(4)(a) and (4)(b) and is entitled to protection under Section 38-11-107," which, in certain circumstances, restricts the maintenance of liens against residences. Utah Code Ann. § 38-11-102.

Mr. Radford hired an attorney to assist him by explaining his need for an American Sign Language interpreter to the Lien Recovery Fund.  (*Id.* ¶ 22.)  In December 2009, the Lien Recovery Fund dismissed its denial of Mr. Radford's application and agreed to hold another meeting with Mr. Radford—this time with an interpreter present, on the condition Mr. Radford give two weeks written notice.  (*Id.* ¶ 22.)  Mr. Radford requested such a meeting but received notice from the Lien Recovery Fund that it could not schedule the meeting at that time due to a back-log of cases.  (*Id.* ¶ 23.)  This January 2010 notice also promised the Lien Recovery Fund would schedule a meeting before Mr. Radford's case went up for review.  (*Id.* ¶ 23.)

In April 2010—before the Lien Recovery Fund scheduled any meeting—Mr. Radford paid $7,868.00 to the supplier's attorney to satisfy the lien and thus avoid a sheriff's sale.  (*Id.* ¶ 24.)  In August 2010, Mr. Radford's attorney received another notice from the Lien Recovery Fund that Mr. Radford's application was incomplete.  (*Id.* ¶ 25.)  The Residence Lien Recovery Fund Advisory Board (the "Board") later considered and rejected Mr. Radford's application because information from the supplier showed the supplier had not actually used the materials giving rise to the lien on Mr. Radford's home.  (*Id.* ¶¶ 16, 26.)  The supplier eventually stipulated to vacate its judgment on the lien.  (*Id.* ¶ 29.)

## DISCUSSION

### A. ADA Claims & Eleventh Amendment Sovereign Immunity

Under the Eleventh Amendment, states have immunity from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  This grant of immunity also extends to unconsented suits brought by a state's own citizens.  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citations omitted).  "'[A]rms' of a state may assert the Eleventh Amendment as a defense

to suit in federal court."[4]  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1232 (10th Cir. 1999) (citation omitted).  Congress may, however, abrogate a state's Eleventh Amendment immunity.  *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

The Supreme Court, in *United States v. Georgia*, 546 U.S. 151 (2006), "explained the procedure by which courts should address Title II cases brought against states."  *Guttman v. Khalsa*, 446 F.3d 1027, 1035 (10th Cir. 2006) (*Guttman III*).[5]  Under *Georgia*'s procedural roadmap, a court must:

> [D]etermine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 159.  The first step under *Georgia* requires this Court "identify the state's conduct that allegedly violated Title II's prohibition against disability discrimination in the provision of state services or programs."  *Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012) (*Guttman V*).  The Tenth Circuit has clarified that this first step requires this Court first to determine whether Mr. Radford states a valid claim under Title II before determining "whether Congress abrogated sovereign immunity as applied to the class of conduct at issue in this case."  *Guttman*

---

[4] The parties do not dispute the Department constitutes an arm of the state of Utah.  This Court agrees.  *See Sutton*, 173 F.3d at 1232 (listing factors considered in determining whether a political subdivision constitutes an "arm of the state"); Utah Code Ann. §§ 13-1-2 to -3, -7.

[5] Because this Memorandum Decision and Order cites to multiple opinions from the Tenth Circuit's *Guttman* line of cases, this decision will cite to *Guttman* using the designations from the Tenth Circuit's January 11, 2012 opinion, *Guttman v. Khalsa*, 669 F.3d 1101, 1106 (10th Cir. 2012), which the Court will identify as *Guttman V*.

*III*, 446 F.3d at 1035–36 (citation omitted).[6] Following that instruction, the Court now addresses whether Mr. Radford validly states any claims under Title II.

## B. Mr. Radford Cannot State a Valid Claim Under Title II

Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege:

(1) that he [or she] is a qualified individual with a disability;

(2) that he [or she] was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;[7] and

(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999) (alteration in original) (citation omitted).

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the

---

[6] *See also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007) (noting *Georgia* "require[s] [courts] to determine in the first instance if any aspect of the . . . alleged conduct forms the basis for a Title II claim"); *Buchanan v. Maine*, 469 F.3d 158, 172 (1st Cir. 2006) ("[C]ourt[s] must determine in the first instance . . . which aspects of the State's alleged conduct violated Title II."); *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (declining to explicitly decide whether *Georgia* requires courts to determine validity of a Title II claim before proceeding to constitutional analysis but nonetheless proceeding in that order); *Beem v. Kansas*, No. 10-3012-CM, 2012 WL 1534592, at *3 (D. Kan. Apr. 30, 2012) (unpublished) (noting that under *Georgia*, "the court must first determine whether the public entity violated the ADA").

[7] The ADA defines a "public entity" as "any State or local government . . . [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)–(B). The parties do not dispute the Department constitutes a "public entity" under the ADA.

removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The parties do not dispute Mr. Radford, who is deaf, has a disability under the ADA. *See* 42 U.S.C. § 12102(1)–(2). But the parties do dispute whether Mr. Radford is a "*qualified* individual with a disability." 42 U.S.C. § 12131 (emphasis added). Put simply, a "qualified individual with a disability" is someone who "'is able to meet all of a program's requirements in spite of his [disability],'" even if that would require "reasonable modifications or accommodations . . . that do not fundamentally alter the program." *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1196 (10th Cir. 2008) (alteration in original) (quotation and citations omitted) (explaining definition of "otherwise qualified" under Rehabilitation Act).[8]

The services or program at issue here involve Mr. Radford's attempts to obtain a Certificate of Compliance from the Lien Recovery Fund. In his Complaint, Mr. Radford states the Board denied his application on the basis that the contractor did not use the materials giving rise to the lien on Mr. Radford's home, and thus "the Lien Recovery Board had no jurisdiction over the lien." (*See* Compl. ¶¶ 16, 26.) Mr. Radford does not dispute he failed to meet this eligibility requirement—that the materials giving rise to the lien actually be used on his home. According to Mr. Radford's Complaint, then, even with reasonable modifications—as Mr. Radford requested, a certified American Sign Language translator—Mr. Radford still would not

---

[8] "'To the extent feasible, we look to decisions construing the Rehabilitation Act to assist us in interpreting analogous provisions of the ADA.'" *Cohon ex rel. Bass v. N.M. Dept. of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Patton v. TIC United Corp.,* 77 F.3d 1235, 1245 (10th Cir. 1996)).

have met "the essential eligibility requirements." *See* 42 U.S.C. § 12131(2). Mr. Radford thus does not constitute a "qualified individual with a disability," 42 U.S.C. § 12131(2), and he does not state a valid claim under the ADA. *See Briggs v. Walker*, 88 F. Supp. 2d 1196, 1203 (D. Kan. 2000) (dismissing wheelchair-bound plaintiff's Title II complaint where plaintiff did not "plead[] the facts showing she is qualified to operate a motor vehicle on public roadways with an instruction permit").

### C. Mr. Radford Cannot State a Valid Claim Under Title III

Mr. Radford's Fourth and Fifth Causes of Action under the ADA also fail for the additional, independent reason that they do not apply to the Department. Although Mr. Radford identifies his Fourth and Fifth Causes of Action as claims under Title II, the substance of these claims clearly derives from Title III of the ADA. *See Sec. & Exch. Comm'n v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) (noting "[t]he name which the complaint affixes to the . . . claim is not controlling"). These claims refer to the Department as a "public accommodation" and directly quote—albeit without citation—language from Title III. (Compl. ¶¶ 54, 60, 67.)

Title III makes discrimination by "public accommodations" against individuals with disabilities unlawful. 42 U.S.C. § 12182(a). The ADA defines "public accommodations" as including a variety of "private entities." 42 U.S.C. § 12181(7). "Private entities" include "any entity *other than a public entity* (as defined in section 12131(1) of [the ADA])." 42 U.S.C. § 12181(6) (emphasis added). The Department, as noted above, represents a "public entity" under the ADA, and Mr. Radford identifies the Department as such in the second paragraph of his Complaint. (Compl. ¶ 2.) "Title III expressly does not apply to public entities" like the Department, *see Bloom v. Bexar Cnty, Tex.*, 130 F.3d 722, 726 (5th Cir. 1997), and Mr. Radford

does not argue—nor does the face of the Complaint reveal—that any special circumstances apply, *see Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 874–76 (9th Cir. 2004) (noting some exceptions). Mr. Radford's ADA claims must therefore fail.

### D. Rehabilitation Act Claim

In addition to his ADA claims, Mr. Radford asserts a cause of action under Section 504 of the Rehabilitation Act. Section 504 of the Rehabilitation Act states in pertinent part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). The definition of "program or activity" includes any "department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). "To establish a prima facie claim under § 504, a plaintiff must demonstrate that '(1) plaintiff is handicapped under the Act; (2) [she] is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff.'" *Barber ex rel. Barber v. Colo. Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *Hollonbeck*, 513 F.3d at 1194).

The parties dispute whether Mr. Radford was "otherwise qualified" under prong two. "A plaintiff is 'otherwise qualified' under the Rehabilitation Act if he 'is able to meet all of a program's requirements in spite of his [disability].'" *Hollonbeck*, 513 F.3d at 1196 (alteration in original) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979)). Claims brought under Section 504 and Title II of the ADA share the same substantive standards. *Miller ex rel. S.M. v. Bd. of Educ.*, 565 F.3d 1232, 1245 (10th Cir. 2009); *see also Cohon*, 646 F.3d at 725–26. As discussed above, even with reasonable modifications or accommodations, Mr. Radford did not

qualify for participation in the program because the supplier did not use the materials at issue on his home. Mr. Radford therefore was not "otherwise qualified" and thus cannot state a valid claim under Section 504.

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss and DENIES Defendant's Motion for a More Definite Statement.

DATED this 19th day of March, 2013.

                                          BY THE COURT:

                                          _____
                                          EVELYN J. FURSE
                                          United States Magistrate Judge